# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WORLDPAY, US, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17-cv-4179 |
| IRINA HAYDON and EUNYT LLC, | ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Worldpay, US, Inc. ("Worldpay") has brought this suit against defendant Irina Haydon, a former employee of Worldpay, and defendant Eunyt LLC ("Eunyt"), a corporation formed by Haydon. Worldpay asserts that at various points throughout the discovery process in this case, the defendants have failed to live up to their discovery obligations. Accordingly, Worldpay has filed both a Motion to Compel Discovery and a Motion for Sanctions. For the following reasons, the Motion to Compel Discovery is granted and the Motion for Sanctions is denied.

## BACKGROUND

Prior to the events at issue in this lawsuit, Haydon was employed as an executive vice president at Worldpay, a company that operates as a credit card processing service. *See* Compl. 1, 5, ECF No. 1. Worldpay alleges that, toward the end of her employment at Worldpay, Haydon, along with several other Worldpay employees, began the process of setting up a separate corporation called Eunyt. After Worldpay learned of those plans, it fired Haydon in a letter dated May 11, 2017. *See* Ex. C, ECF No. 88-1. That letter warned Haydon to "locate and preserve" and not to "destroy, conceal, or alter" documents relevant to the formation of Eunyt. *Id.* About three weeks later, on June 1, 2017, Worldpay filed this lawsuit against both Haydon and Eunyt.

Worldpay made numerous allegations against Haydon, including that she had misappropriated Worldpay's trade secrets and confidential information. Worldpay also alleged that Haydon was liable for breach of contract and tortious interference with business relations. Haydon responded by filing a counterclaim against Worldpay, alleging that her termination violated the anti-retaliation provisions of the False Claims Act and the Sarbanes-Oxley Act.

The discovery process in this litigation has been long and complicated. In March 2018, Worldpay filed a Motion to Compel Discovery. In it, Worldpay alleged that the defendants' discovery productions up to that point had been deficient. According to Worldpay, the defendants had failed to produce responsive documents that were in their possession, and they had over-designated certain documents as confidential. *See* Worldpay's Mot. to Compel Defs.' Disc. ("Mot. to Compel") 5-7, ECF No. 80.

Around the same time, two additional pieces of information came to light. The first was that an Internet domain that had been created for Eunyt, which included e-mail accounts for Eunyt employees, had been shut down. The domain had been set up around March 2017, and about five or six Worldpay employees were provided with Eunyt e-mail addresses. *See* Written Answers of Hila Shpigelman ¶¶ 24-26, Ex. E, ECF No. 101-1. The exact date of the domain's shutdown has not been determined, but the record evidence indicates that it was active up until at least May 30, 2017, or June 1, 2017. *See* Mem. of Law in Supp. of Mot. for Sanctions for Spoliation of Evid. ("Mot. for Sanctions") 4-5, ECF No. 88. The second piece of information was that in April 2017, Randy Standish, then a Worldpay employee whom Haydon had hired to do work in connection with the formation of Eunyt, had copied Haydon's Worldpay e-mail account, containing about twenty gigabytes of data, to an e-mail account on the Eunyt domain. *See id.* at 2. Upon learning these facts, Worldpay filed a Motion for Sanctions in May 2018, arguing that the defendants were

responsible for spoliation of evidence, as they had not produced or preserved the electronic data from the Eunyt domain, including the twenty gigabytes of data that Standish had copied.

Discovery problems persisted throughout the summer. As an attempt to remedy some of those problems, this Court entered an order on June 29, 2018. That order required that the defendants produce the entirety of Haydon's personal Yahoo e-mail account from November 1, 2016, to May 11, 2017, subject only to a privilege review and the protective order governing this case. *See* Min. Entry 1, ECF No. 99.

In August 2018, Worldpay filed a Sur-Reply supplementing both its Motion for Sanctions and its Motion to Compel Discovery with additional information. *See generally* Pl.'s Sur-Reply in Supp. of Its Mots. to Compel and for Sanctions ("Sur-Reply"), ECF No. 101. Those motions are both now before this Court.

## DISCUSSION

### I. Motion to Compel Discovery

It is clear that Worldpay never should have had to bring the Motion to Compel Discovery. As Worldpay argued in that motion, the defendants' initial discovery productions were missing significant categories of information. *See* Mot. to Compel 5-6. They were also over-designated as confidential, as the entirety of Haydon's and Eunyt's productions were marked as either Confidential or Highly Confidential. *See id.* at 6-7. The defendants have not even seriously attempted to contest these points. In fact, the defendants' motion in response to all of Worldpay's various motions is titled "Defendants' Response to Plaintiff's Motion for Sanctions"; they do not even directly respond to the arguments advanced in the Motion to Compel Discovery. *See generally* Defs.' Resp. to Pl.'s Mot. for Sanctions ("Response"), ECF No. 102. They have made no real attempt to argue that their discovery productions throughout this litigation have been complete. Indeed, the inadequacy of their productions is underscored by the fact that this Court

3

was forced to enter an order on June 29, 2018, requiring that the defendants produce the entirety of Haydon's Yahoo e-mail account from November 1, 2016, to May 11, 2017, subject only to the protective order and a privilege review. *See* Min. Entry 1, ECF No. 99. Accordingly, the Court grants Worldpay's Motion to Compel Discovery.

In its initial Motion to Compel Discovery, Worldpay requested that this Court enter an order that would compel the defendants to produce additional discovery to make up for what it argued were deficiencies in the defendants' original discovery responses. Mot. to Compel 13. Worldpay reiterated this request in its Sur-Reply in August. Sur-Reply 9. To the extent that this request is still before this Court, however, it has been overtaken by events. At a hearing in open court on October 25, 2018, all parties in this litigation agreed that discovery in this matter is closed. Thus, Worldpay's request to compel additional production of documents is denied as moot.

Alternatively, Worldpay requests in its final reply for the Court to enter an order that would limit the production of admissible evidence "to the evidence produced on or before September 24, 2018." Pl.'s Suppl. Reply in Supp. of Its Mots. to Compel Disc. and Mot. for Sanctions for Spoliation ("Reply") 7, ECF No. 103. The basis for this, as Worldpay's counsel discussed in open court on October 25, is that Worldpay is concerned that the defendants will attempt to use documents that were in their possession and responsive to Worldpay's discovery requests in future dispositive motions. This request is also denied as superfluous. It is a general proposition of law that, after discovery is closed, a party may not rely on documents that it had in its possession but failed to produce during discovery. There is no need for an order that states as much.

Nevertheless, while the Court will not order any additional production of documents or enter the requested order, it remains the case that Fed. R. Civ. P. 37(a)(5)(A) provides that if such a "motion is granted—or if the disclosure or requested discovery is provided after the motion was

filed—the court must" require the party whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The Court may not order this payment, however, under three circumstances. These are 1) if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action," 2) if "the opposing party's nondisclosure, response, or objection was substantially justified," or 3) if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Because the Court concludes that none of those circumstances is present here, Worldpay is entitled to an award of attorney's fees. Worldpay may recover costs and attorney's fees involved in preparing and presenting its initial Motion to Compel Discovery. Worldpay may not recover such fees for all of the subsequent motions, however, nor for other discovery expenses unconnected to the original motion. The Court is aware that the initial motion has turned into a much longer saga, and that the discovery process in this case has been long and drawn-out. The Court concludes, however, that it is sufficient and appropriate to limit its award of costs and attorney's fees to those associated with the original motion.

## II. Motion for Sanctions

Worldpay also seeks sanctions based on the defendants' failure to preserve electronic evidence. The legal standard regarding when sanctions may be imposed as a consequence of the spoliation of evidence when that evidence is in electronic form is provided by Federal Rule of Civil Procedure 37(e).[1] Rule 37(e) was substantially revised in the December 2015 amendments

---

[1] The parties disagree as to whether Rule 37(e) is the ***exclusive*** means by which the Court may exercise its authority to order sanctions as a remedy for spoliation of electronically stored evidence in this case. Worldpay argues that the Court may take such an action under its own inherent power. *See* Sur-Reply 7. As the defendants note, however, this interpretation is at odds with the Advisory Committee Notes to the 2015 amendment to Rule 37(e), which state that the rule "forecloses reliance on inherent authority or state law to determine when certain measures

5

to the Federal Rules. As Magistrate Judge Johnston wrote in *Snider v. Danfoss, LLC*, No. 15-cv-4748, 2017 WL 2973464 (N.D. Ill. July 12, 2017), *report and recommendation adopted*, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017), the introductory clause of the current version of Rule 37(e) sets out five prerequisites that must be met before any sanctions may be imposed. First, the information at issue must be electronically stored information (ESI). Second, there must be anticipated or actual litigation. Third, it must be the case that because of the actual or anticipated litigation, the information should have been preserved. Fourth, the ESI must have been lost because a party failed to take reasonable steps to preserve it. And fifth, the lost ESI must be unable to be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e); *Snider*, 2017 WL 2973464, at *4.

If all of those prerequisites are met, and the Court also determines that one party was prejudiced from the loss of the information, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). In addition, if the Court concludes that the offending party acted "with the intent to deprive another party of the information's use in the litigation," then it may impose more severe sanctions. Fed. R. Civ. P. 37(e)(2). These may include presuming that the lost information was unfavorable to the party, instructing a jury that it may or must make that same assumption, and dismissing the action or entering a default judgment. *Id.*

The central fact that Worldpay points to with respect to its Motion for Sanctions is that the Eunyt domain—and the e-mail accounts hosted on it—were shut down. Worldpay argues that those accounts contained information that is relevant to its claims, and that information is now unavailable because Haydon shut down the domain. Haydon's story is somewhat different.

---

should be used." Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015 Amendment; Response 3. In any case, the Court need not answer the question definitively here, as the Court declines to order sanctions under its inherent authority even assuming that such an action would be permissible. The Court will therefore analyze the issue of whether sanctions should be imposed exclusively under the heading of Rule 37(e).

6

Haydon cites the written testimony of Hila Shpigelman, whom Haydon had hired to do work related to the formation of Eunyt in early 2017. Shpigelman was one of the people responsible for setting up the Eunyt domain. Shpigelman states that Haydon did not instruct her to shut down the entire domain. According to Shpigelman, "Haydon instructed me to only have the email addresses for all Eunyt employees (except hers) closed. She did not tell me to shut down the entire domain." Written Answers of Hila Shpigelman ¶ 36. It is not clear from the record, however, whether this command was actually carried out as instructed. Nor is it clear, assuming that it was, how exactly Haydon's account and the rest of the domain were shut down as well.

In the present case, the five prerequisites in Fed. R. Civ. P. 37(e)'s introductory clause are all met. The defendants do not dispute that the first three requirements have been satisfied: they agree that the information stored on the Eunyt domain was ESI; that there was anticipated or actual litigation; and that as a result of that litigation, the defendants "should have preserved information on the Eunyt domain." Response 5. The defendants do, however, deny that Haydon failed to take reasonable steps to preserve the information. They argue that Haydon's instructions to Shpigelman, requesting that the other e-mail accounts be closed but that Haydon's own account and the Eunyt domain be preserved, constituted a reasonable step to preserve information. *Id.* This argument must fail, however, because even if one accepts that this was actually the instruction that Haydon gave to Shpigelman, the truth remains that the domain was in fact shut down. Aside from this instruction, the defendants have cited no other steps—let alone anything that would amount to a reasonable step—to ensure that the information was preserved.

The defendants also argue that the information that was on the Eunyt domain is otherwise still available to Worldpay. They make two assertions in this respect. First, they contend that Worldpay has had the information copied by Standish to the Eunyt domain. *See id.* While that may

be true for the subset of information that was copied from Worldpay, it is not true for all of the other information on the Eunyt domain. Second, the defendants also assert that Haydon's Yahoo account "was copied on all matters dealing with Eunyt," meaning that, because the defendants were forced to produce the contents of the Yahoo account during the relevant time frame, Worldpay is able to know how its information was used. *See id.* at 5-6. It is hardly clear from the record, however, that this is the case. As Worldpay points out, in one instance, Standish sent an e-mail to both Shpigelman's and Haydon's Eunyt accounts; Shpigelman then forwarded it to Haydon's Yahoo account. *See* Ex. B, ECF No. 103-2. This would not have been necessary if Haydon's Yahoo account were being automatically copied on all e-mails to her Eunyt account.

Where Worldpay's claim falters, however, is that the company has not shown that it was prejudiced by the lack of this information, as required to support sanctions under Rule 37(e)(1), or that the defendants acted with the requisite intent under Rule 37(e)(2). The primary sanction that Worldpay has specifically requested is that the Court enter an order including an inference that the destroyed evidence was unfavorable to the defendants. *See* Mot. for Sanctions 8; Reply 7. This requires that the Court determine that the defendants acted "with the intent to deprive [Worldpay] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). This is similar to the Seventh Circuit's case law, pre-dating the current version of Rule 37(e), which holds that in order to draw an inference that destroyed information was unfavorable to a party, a court must find that the evidence was destroyed in bad faith. *See, e.g.*, *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). A document "is destroyed in bad faith if it is destroyed 'for the purpose of hiding adverse information.'" *Id.* (quoting *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001)).

Worldpay's primary argument with respect to intent is straightforward: it is that the defendants intentionally shut down the Eunyt e-mail accounts containing the relevant ESI. *See* Mot. for Sanctions 7. Indeed, Worldpay points out that by the defendants' own admission, per the Shpigelman testimony, Haydon ordered Shpigelman to shut down a subset of those e-mail accounts, including all Eunyt accounts other than her own. *See* Reply 5. Worldpay also notes that in Haydon's own deposition testimony, Haydon appears to state that she told Shpigelman to shut down the Eunyt e-mail accounts, without making any exception for her own account. *See* Dep. of Irina Haydon 183:17–184-10, Ex. 23, ECF No. 96. It is not obvious, however, that an intent to shut down an e-mail account equates to an intent to ensure that the information on it is permanently deleted, such that it would never be accessible to anyone again. Nor is it clear, even assuming that Haydon intended to delete the information permanently, that she did so for the purpose of hiding adverse information. In all of its various motions, Worldpay has cited no case law that elaborates on what it means to destroy information with the intent to deprive another party of its use in the litigation, let alone establishes that the defendants in this case possessed the requisite intent. As a result, Worldpay has fallen short of demonstrating that the defendants destroyed the information with the intent to deprive Worldpay of its use in the litigation. Accordingly, the Court declines to order sanctions under Rule 37(e)(2).

While Worldpay has not explicitly requested any specific sanction less severe than an adverse inference instruction, the Court could choose to impose one if Worldpay could show that it was prejudiced by the loss of the information at issue. "To suffer substantive prejudice due to spoliation of evidence, the lost evidence must prevent the aggrieved party from using evidence essential to its underlying claim." *In re Old Banc One S'holders Sec. Litig.*, No. 00-cv-2100, 2005 WL 3372783, at *4 (N.D. Ill. Dec. 8, 2005) (citing *Langley by Langley v. Union Elec. Co.*, 107

F.3d 510, 515 (7th Cir. 1997)). That means that in order to evaluate whether a party has been prejudiced, "the court must have some evidence regarding the particular nature of the missing ESI." *Snider*, 2017 WL 2973464, at *5.

In the present case, the "nature of the missing ESI" is that it consisted of information on the e-mail accounts hosted on the Eunyt domain, presumably including e-mail communications to and from Eunyt employees. Worldpay argues that it has been prejudiced because the failure to preserve the Eunyt accounts has prevented it from identifying 1) Worldpay employees that were involved with the effort to create Eunyt, 2) Worldpay clients that were improperly solicited by Haydon or Eunyt, and 3) the scope of Worldpay's proprietary information that the defendants improperly used. *See* Mot. for Sanctions 7. The problem, however, is that while Worldpay has articulated what it hopes that it might have found among the deleted information, it has provided little reason to be confident that this information actually would have been found had the domain not been shut down. It has at best an educated guess about what might have been on the domain. And, once again, throughout all of its motions, Worldpay has failed to cite any case law that elaborates on what it means to be prejudiced under the meaning of Fed. R. Civ. P. 37(e)(1) or establishes that it has been so prejudiced. In this context, the Court declines to find that Worldpay has been prejudiced.

Finally, Worldpay asks that the Court dismiss Haydon's counterclaims, on the basis that Haydon has refused to produce information relevant to those counterclaims. *See* Sur-Reply 5, 9. This request is likewise denied. The dismissal of a claim (or, here, a counterclaim) is one of "the most extreme sanctions available pursuant to the Federal Rules of Civil Procedure." *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 355 (N.D. Ill. 2016). It is "well settled" in the Seventh Circuit that "the ultimate sanction of dismissal should be involved only in extreme situations, when

there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Rice v. City of Chicago*, 333 F.3d 780, 785-86 (7th Cir. 2003) (citations and internal quotation marks omitted). That standard has not been met here. To the extent that Worldpay believes that Haydon has failed to produce information sufficient to support her counterclaims, it may argue as much at summary judgment.

\*       \*       \*

For the reasons stated above, Worldpay's Motion to Compel Discovery is granted and its Motion for Sanctions is denied. Worldpay may submit a request to recover costs and attorney's fees specifically related to the preparation and initial presentment of its Motion to Compel Discovery.

Dated: November 14, 2018

John J. Tharp, Jr.
United States District Judge